IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:25-CV-1553-M

| | |
|---|---|
| KRISTIE KAY JONES,<br><br>Plaintiff/Claimant,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | MEMORANDUM AND RECOMMENDATION |

This matter is before the court on Claimant Kristie Kay Jones's ("Claimant") motion for judgment on the pleadings and memorandum,[1] [DE-14,-15], the Commissioner's response brief, [DE-16], and Claimant's reply brief, [DE-17]. Claimant filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Having carefully reviewed the administrative record and the briefing submitted by the parties, it is recommended that the matter be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 23,

[1] This action is governed by the Supplemental Rules for Social Security Actions under 42 U.S.C. 405(g), which provide that "[a] motion under Civil Rule 12 must be made within 60 days after notice of the action is given under Rule 3." Suppl. Rule 4(c). The Rule 3 notice in this case was issued on October 24, 2025, and the Commissioner did not file a Rule 12(c) motion but rather filed a copy of the administrative record in conformity with Rule 4(b). Therefore, pursuant to Rule 5, the action is properly "presented for decision by the parties' briefs," and Claimant should have filed a brief rather than a motion and memorandum. *See* Dec. 23, 2025 Briefing Notice [DE-13] ("In this action, Defendant filed transcripts as an answer under Supplemental Rule 4 on December 22, 2025. Accordingly, under Supplemental Rule 6, Plaintiff's brief must be filed with the court on or before January 21, 2026. Electronic filers must use the 'Social Security Plaintiff's Brief' event in CM/ECF to file the brief.").

2022, alleging disability beginning November 30, 2018. (R. 214–23). The claim was denied initially and upon reconsideration. (R. 79–111). A hearing before an Administrative Law Judge ("ALJ") was held on November 20, 2024, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 40–73). On December 10, 2024, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–39). The Appeals Council denied Claimant's request for review, (R. 1–6), and Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is

limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity from the alleged onset date through the date last insured of September 30, 2024. (R. 19). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease, status-post surgery; right rotator cuff, status-post surgery; history of seizures; major depressive disorder; generalized anxiety disorder/panic attacks; trauma/stressor-related disorder, unspecified; bipolar disorder; schizoaffective disorder; osteoarthritis; and hypertension. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 21–22).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work[2] with the following limitations:

> [T]he claimant can occasionally reach overhead with the dominant, right upper extremity but frequent reaching in all other directions. The claimant can frequently push, pull, and operate hand controls with the right upper extremity. She can occasionally climb ramps and stairs, but no [sic] climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant should avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. The claimant requires a stand/sit

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

> option allowing for position changes every 30 minutes. The claimant can understand simple instructions and perform simple tasks; she is able to maintain concentration, persistence and pace to stay on tasks for 2 hours at a time over the course of typical 8-hour day with normal breaks in order to perform such tasks, in a low stress work setting, which is further defined to mean no production-pace or quota-based work; rather, she requires a goal-oriented job primarily dealing with things instead of people. The claimant is limited to occasional social interaction as part of the job with supervisor and co-workers but no work with the public, such as sales or negotiation, which does not preclude incidental or casual contact as it might arise, but she should not be required to work directly with the public to any extent. The claimant is limited to occasional changes in the work setting.

(R. 22–31) (footnote omitted). In making this assessment, the ALJ found Claimant's statements about her limitations were not persuasive of disability based on the medical evidence and other evidence in the record. (R. 24). At step four, the ALJ concluded Claimant had no past relevant work; nevertheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform. (R. 31–32).

## V. DISCUSSION

Claimant contends the ALJ erred in formulating her RFC by (1) failing to address the absenteeism that would be caused by her impairments, particularly considering her history of involuntary commitments; (2) not adequately articulating the basis of his conclusions; and (3) improperly "cherry picking" evidence and substituting his lay opinion for that of the medical experts. Pl.'s Br. [DE-15] at 13–28; Pl.'s Reply [DE-17]. The Commissioner contends (1) the ALJ did not need to address possible absenteeism because medical appointments alone are insufficient to establish disability resulting from absenteeism, and (2) substantial evidence supports the ALJ's evaluation of the opinion evidence. Def.'s Br. [DE-16] at 6–16.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at

*1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636).

**1. Mental Health Status**

At step-two the ALJ found Claimant had medically determinable severe physical and mental impairments. Regarding her mental health impairments, Claimant takes issue with the ALJ's evaluation of their vocationally limiting effects, asserting the ALJ's opinion lacks analysis and cherry-picks evidence to support a finding of not disabled.

The ALJ notes Claimant testified she has depression and anxiety which have caused difficulties in her work and personal life. (R. 27). Reviewing the records the ALJ noted Claimant had normal mental status exams, some where she was stable, and others where she would report depression worsening in 2018 and 2019. *Id.* However, in January 2020, emergency responders were called to Claimant's residence where she was in active psychosis, combative, and she tried

to grab a police officer's gun and steal an ambulance. (R. 27, 468, 908, 970). Due to this episode Claimant was involuntarily committed from January 6, 2020 to January 14, 2020. (R. 474–75, 908–18). During that time, she was diagnosed with Bipolar 1 with psychotic features and PTSD. (R. 970). Following that incident Claimant recovered and was noted to be doing well at visits in April and June 2020. (R. 27, 1422, 1425).

The ALJ noted Claimant had no mental health complaints in February or September 2021, (R. 27), but the ALJ did not acknowledge, or perhaps missed, that Claimant was again involuntarily committed on May 11, 2021, (R. 1329–30). Claimant's family was concerned because she was hallucinating, disoriented, not sleeping, and stopped taking her medications. (R. 1329). Claimant was discharged May 18, 2021, with a diagnosis of schizoaffective disorder, bipolar type. (R. 1328–31).

The ALJ acknowledged that on January 15, 2022, Claimant presented to the hospital with hallucinations. (R. 28, 1256–60). She was again admitted and discharged several days later on January 23, 2022. *Id.* Claimant was involuntarily committed again for several days in July 2022, after reporting to the emergency department with hallucinations, paranoia, insomnia, and panic attacks. (R. 28, 717). The record indicates Claimant was not hospitalized for psychosis again until February 25, 2024, even though she had a normal status exam the month prior. (R. 28, 1717–19, 1980, 1988).

Claimant asserts the ALJ cherry-picked record evidence by emphasizing Claimant's positive mental status exams despite her repeated hospitalizations, seeming to discount the severe nature of her psychosis. Pl.'s Br. [DE-15] at 24. Furthermore, due to this discounting of the severity of Claimant's mental health conditions, Claimant asserts the ALJ failed to discuss the inevitable absenteeism that would be caused by Claimant's repeated involuntary hospitalizations.

*Id.* at 14, 16.

The "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020) (finding the ALJ's conclusion erroneous where he misstated material facts and selectively cited from the record). When summarizing Claimant's mental health history, the ALJ acknowledged Claimant was hospitalized in January 2020, January 2022, July 2022, and February 2024, reporting each time Claimant's mental health improved following the administration of medication and a period of inpatient care. (R. 27–28). Courts in this circuit have repeatedly recognized, in the context of Social Security disability appeals, that "generally normal mental status examination findings track[] the waxing and waning features of many mental health conditions," *Clayton v. Bisignano*, No. 4:24-CV-00148-M, 2025 WL 4033824, at *7 (E.D.N.C. Dec. 12, 2025) (citations omitted), *adopted*, 2026 WL 88760 (E.D.N.C. Jan. 12, 2026), and, thus, intermittent periods of functionality do not mitigate repeated hospitalizations from mental impairments. *See Howe v. Kijakazi*, No. 7:22-CV-66-FL, 2023 WL 5363719, at *5 (E.D.N.C. July 31, 2023) (finding error where the ALJ found the claimant's mental health improved with treatment but failed to acknowledge repeated relapses) (citing *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 368 (4th Cir. 2023) (reasoning, in the context of considering whether depression was disabling under the listings, that "[t]he waxing and waning of [a claimant's] symptoms would hinder her from being a dependable employee.")), *report and recommendation adopted*, 2023 WL 5356209 (E.D.N.C. Aug. 21, 2023).

Here, the ALJ did not "cherry-pick" Claimant's mental health record but did summarize

the record evidence showing the severity of Claimant's condition waxed and waned. However, the ALJ failed to discuss or evaluate how Claimant's mental health status would nonetheless affect her ability to maintain employment. This error is particularly apparent in regards to ALJ's failure discuss absenteeism in the RFC determination, which was necessary considering the impact of (1) Plaintiff consistently requiring inpatient hospitalization to address her mental health and (2) the testimony of the VE that most employers will not tolerate an employee missing more than one day of work per month. Pl.'s Br. [DE-15] at 14, 16 (citing R. 67); *see Chappelle v. O'Malley*, No. 25-2267, 2026 WL 3001709, at *1 (4th Cir. Oct. 6, 2026) ("because the ALJ's assessment does not include a discussion of how the evidence supports his findings regarding absenteeism, we are unable to meaningfully review this issue."). Claimant cited her medical records indicating she had procedures, office visits, and inpatient hospitalizations at a rate that would preclude employment. *Id.* at 14–16 ("the medical record covers about 6.5 years during which there were 223 days on which Ms. Jones received some form of medical care. This is approximately 9.5% of all days during that time period."). From 2020 to 2024, Claimant was involuntarily committed for a total of 43 days.[3] *Id.* at 15 (citing R. 468–513, 717–66, 908–18, 1256–327, 1328–412, 1436–38, 1717–19, 1980–2008). During the same period Claimant made 17 unexpected trips to the emergency room. *Id.* (citing R. 409–57, 518–716, 767–822, 1413–19, 2008–2240). From 2018 to 2024, Claimant also underwent 30 procedures, *id.* (citing R. 458–67, 516–17, 566–67, 646–51, 823–24, 851–53, 859–61, 884–88, 994–1002, 1019–25, 1034–41, 1060, 1091–97, 1111–18, 1127–48, 1238–40, 1512, 1595–604, 1740–45, 1858–60), and had 125 office visits, *id.* (citing R. 827–99,

[3] Claimant's brief includes a table with the total days hospitalized from 2018 through 2024. *See* Pl.'s Br. [DE-15] at 16. Although Claimant states she was hospitalized a total of 53 days, the record and Claimant's table indicates she was hospitalized a total of 43 days. This discrepancy does not impact the court's determination that the ALJ should have provided a discussion regarding absenteeism. *See Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at *2 n.2 (4th Cir. Apr. 14, 2023). Plaintiff corrected the error in the Reply Brief. *See* [DE-17].

923–1125, 1149–203, 1214–50, 1422–1661, 1675–713, 1740–1979, 2241–376).

The Commissioner asserts Claimant's argument should be rejected because medical appointments alone are insufficient to establish disability resulting from absenteeism. Def.'s Br. [DE-16] at 6. The Commissioner points out that the ALJ should only consider relevant evidence in the record when assessing a claimant's ability to work, such as "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption of routine, side effects of medication)." *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *5). Furthermore, the Commissioner asks this court to consider whether Plaintiff's medical appointments could be scheduled outside of working hours or whether each appointment would require her to miss a full day of work. *Id.* at 7.

The ALJ's opinion contains no discussion of the possible vocationally limiting effects of Claimant's repeated involuntary hospitalizations, which in this case frustrates meaningful review. *See Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at *5 (4th Cir. Apr. 14, 2023) (finding meaningful review frustrated by the ALJ's failure to address the claimant's frequency of treatment, how that frequency would impact absenteeism, or how that would impact the RFC considering the VE's testimony regarding how many absences employers will tolerate). "To enable meaningful judicial review, '[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023). Due to the nature of Claimant's hospitalizations, she cannot simply schedule her treatment for a time when she is not scheduled to work. *Cf. Hickey v. Berryhill*, No. ADC-16-3524, 2017 WL 4023095, at *4 (D. Md. Sept. 12, 2017) (where purported absences would arise from "scheduled appointments" and infrequent emergencies, appointments "could hopefully be arranged to accommodate

Plaintiff's work schedule"); *Broom v. Colvin*, No. 5:15-CV-47-BO, 2016 WL 397629, at *1 (E.D.N.C. Feb. 1, 2016) (although the claimant attended mental health appointments once a month and weekly therapy sessions, there was "no evidence in the record which would support a finding that such psychotherapy sessions would necessitate absence from work such that gainful employment could not be maintained"). It is not the role of this court to re-weigh the evidence or substitute its judgment for that of the ALJ. *Mastro*, 270 F.3d at 176. Instead, this court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and the decision was reached through the application of the correct legal standards. *Coffman*, 829 F.2d at 517. Here, the ALJ's failure to discuss absenteeism frustrates meaningful review. Accordingly, it is recommended the case be remanded for further proceedings.

**2. Physical Impairments**

Summarizing Claimant's physical impairments, the ALJ noted Claimant had issues primarily with her back and her right shoulder, both of which required surgery, in addition to neck and knee pain. (R. 23). Claimant injured her shoulder while working as a machine operator in June 2018. (R. 213, 45–65). With conservative treatment, Claimant's shoulder did not improve and eventually required surgery in July 2019. (R. 859–61). Following that first surgery Claimant's shoulder pain worsened. (R. 853–55). In May 2022, Claimant had to have another surgery on the same shoulder. (R. 1238–40).

Claimant asserts that throughout the RFC determination the ALJ merely provided a summary of the record evidence, emphasizing isolated positive notes to show Claimant is not disabled. Pl.'s Br. [DE-15] at 22. For example, the ALJ noted Claimant had normal ranges of motion, coordination, and reflexes, (R. 24), but cited to physical exams that were done at the hospital as a matter of routine triage, not to assess her shoulder or back impairments, (R. 428, 522,

571, 72). Pl.'s Br. [DE-15] at 22. Further, the ALJ cited an isolated positive note referring to Claimant's gait but ignored that at the same appointment she complained of worsening back pain that significantly interfered with her sleep, mood, and function. *Id.* (citing R. 25, 1536–44). The Commissioner contends Claimant is arguing that the ALJ should have weighed the evidence differently, thus Claimant is impermissibly asking this court to reweigh the evidence. Def.'s Br. [DE-15] at 12.

It is not the role of this court to reweigh the evidence, and simply pointing to evidence that could support a finding of disability is not sufficient to require remand. *See Caulkins v. Kijakazi*, No. 20-1060, 2022 WL 1768856, at *5 (4th Cir. June 1, 2022) ("Reasonable minds may differ as to the appropriate weight the ALJ should have assigned to various pieces of evidence in the record," and "[s]ubstantial evidence review does not permit [the court] to supplant the ALJ's judgment with [its] own" where the court can trace the ALJ's reasoning and it is supported by substantial evidence) (citation omitted); *Allen v. Kijakazi*, No. 2:20-CV-89-M, 2022 WL 3655488, at *9 (E.D.N.C. Aug. 4, 2022) ("[T]he fact that Claimant can point to other evidence that supports her position does not render the ALJ's decision unsupported.") (quoting *Lilley v. Saul*, No. 4:19-CV-93-RJ, 2020 WL 3884429, at *11 (E.D.N.C. July 9, 2020)), *adopted*, 2022 WL 3655217 (E.D.N.C. Aug. 24, 2022). Here however, the Claimant is not merely pointing to evidence the ALJ could have weighed differently but accusing the ALJ of impermissibly focusing on evidence in the record that would support a finding of non-disability and ignoring contradictory evidence. "While the ALJ is not required to discuss every piece of evidence . . . , this type of cherrypicking favorable parts of a treatment note while ignoring contradictory parts is impermissible." *Slatton v. O'Malley*, No. 5:23-CV-447-M, 2024 WL 3513506, at *4 (E.D.N.C. July 2, 2024), *adopted*, 2024 WL 3510864 (E.D.N.C. July 23, 2024) (citing *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014);

*Lewis*, 858 F.3d at 869).

After summarizing much of the record evidence concerning Claimant's physical limitations, the ALJ concluded the record did not suggest she had any gait, posture, or ambulatory limitations secondary to her degenerative disc disease. (R. 26). To support this conclusion the ALJ cites Claimant's Neurology records, (R. 2351–82), and the treatment records from Claimant's primary care provider, (R. 1897–979). The ALJ also found that although Claimant's shoulder caused her pain and had limited her range of motion near the date of the original injury, he found later exams showed she had no major complaints following surgery. (R. 26). Claimant points out that the ALJ ignores that Claimant never fully recovered from her shoulder surgery, as she was still experiencing pain and assigned substantial restrictions by Dr. Joseph U. Barker in April 2023. Pl.'s Br. [DE-15] at 23 (citing R. 1877–79). However, the ALJ found Dr. Barker's medical opinion to be unpersuasive. (R. 31).

**a. Medical Opinion Evidence**

To evaluate the limiting effects of Claimant's physical impairments the ALJ relied in part on the opinion evidence in the record. 20 C.F.R. § 404.1545(a)(3). The applicable regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." *Id.* § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3)

the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency, and the decision must contain an explanation of how those factors were considered. *Id.* § 404.1520c(a) & (b)(2).

Notwithstanding, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." *Tyrun W. v. O'Malley*, No. 1:23CV719, 2024 WL 4349241, at *5 (M.D.N.C. Sept. 30, 2024) (quoting *Weidner v. Kijakazi*, No. 20-1250-MN, 2022 WL 610702, at *12 (D. Del. Feb. 1, 2022) (finding the fact that the ALJ did not use "consistency" or "supportability" is not sufficient to remand where the "ALJ plainly considered the consistency of the medical opinions with the evidence of record")). "Thus, the ALJ's failure to specify which factor, i.e., supportability, consistency, or otherwise, was eroded by contrary evidence is inapposite, so long as he (1) analyzed the relevant evidence when considering the persuasiveness of the medical opinion and (2) made his analysis of that evidence clear enough for the court to meaningfully review it." *Id.*

After Claimant's first shoulder surgery she saw Dr. Barker on February 28, 2020, at the Raleigh Orthopedic Clinic, for a second opinion due to her consistent pain despite treatment which included physical therapy, injections, and medications. (R. 1248–50). Due to her condition worsening, Dr. Barker eventually recommended another surgery which Claimant was approved for in May 2022. (R. 1219–21, 1229–34). After another year of recovery Dr. Barker ordered and

adopted a functional capacity evaluation ("FCE"). (R. 1884–93). The ALJ concluded the FCE was not medical opinion evidence because it "was not reflected [sic] of the claimant's longitudinal functioning" and prepared by a physical therapist, which is not an acceptable medical source for opinion purposes. (R. 31).

The ALJ found the opinion of Dr. Barker to not be persuasive, only referencing a work note written by Dr. Barker on October 19, 2022, in which Dr. Barker stated Claimant could return to work with two restrictions: no overhead use of the arm and no lifting over five pounds. (R. 31, 1894). The ALJ found these restrictions to be unpersuasive because they "were temporary and not reflective of longitudinal limitations, as the claimant was in the process of getting treatment." (R. 31). That is the extent of the ALJ's analysis of Dr. Barker's opinion. However, when Claimant discusses Dr. Barker's opinion, Claimant refers to a work note prepared by Dr. Barker on April 19, 2023. Pl.'s Br. [DE-15] at 18 (citing R. 1880). In this later note, Dr. Barker stated Claimant had reached her maximum medical improvement, she still had a permanent partial impairment of 20% in her right shoulder, and he adopted the restrictions according to the guidelines of the FCE or return to work test. (R. 1880).

The ALJ found Dr. Barker's opinion unpersuasive because he wrote a work note partially through Claimant's treatment. Not only did the ALJ fail to discuss the supportability or consistency of Dr. Barker's opinion, but he overlooked the rest of Dr. Barker's treatment notes in the record. That, or the ALJ has engaged in impermissible "cherry-picking." *See Hudson v. Colvin*, No. 7:12-CV-269-FL, 2013 WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (finding the ALJ failed to consider the medical evidence supportive of the claimant's allegations and further engaged in impermissible cherry picking) (citing *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[B]y cherry-picking [a treatment provider's] file to locate a single treatment note that purportedly

undermines her overall assessment of [claimant's] functional limitations, the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness.")). Either way, it is recommended the case be remanded for further proceedings to allow the ALJ to consider the consistency and supportability of Dr. Barker's opinion.

The ALJ appears to have overlooked some of Claimant's treatment records or ignored them as an act of cherry-picking. This inadequacy in the ALJ's assessment frustrates meaningful review. *Mascio*,780 F.3d at 636 ("remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013))). Accordingly, remand is required.

**b. Lay Opinion**

Lastly, Claimant contends the ALJ improperly substituted his own lay opinion for that of the medical providers. Pl.'s Br. [DE-15] at 25–26. Claimant asserts this is shown by the ALJ discrediting Dr. Collins's opinion that Claimant's attention span allowed her to repeat simple tasks for thirty minutes at a time and that she could not follow instructions above a sixth-grade level. Pl.'s Br. [DE-15] at 26 (citing R. 30, 1671). "An ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings." *Arakas*, 983 F.3d at 108.

In *Arakas*, the Fourth Circuit found the ALJ improperly substituted "his own lay opinion for a medical expert's" when he discounted a doctor's opinion that an MRI evidenced chronic cervical spasms; instead, the ALJ concluded "that an MRI would not document a chronic condition of spasm." *Id.* at 109. The ALJ in *Arakas* disregarded a medical opinion by making a blanket claim based on his own lay assumptions, unsupported by anything in the record. *Id.* Here, no such finding occurred, thus Claimant's reliance on *Arakas* is misplaced. *See Lindsey v. Bisignano*, No.

4:24-CV-149-KS, 2026 WL 734661, at *3 (E.D.N.C. Mar. 16, 2026) (finding no error where, without the benefit of medical opinion evidence, the ALJ assessed the claimant's RFC based on the record and evidence and the claimant's statements about his symptoms). The ALJ found that Dr. Collin's opinion that Claimant could only follow instructions at or below a sixth-grade level was not consistent with the evidence that showed Claimant completed her GED, was planning to take college classes, and that her ADHD symptoms improved with medications. Pl.'s Br. [DE-15] at 26 (citing R. 30–31). Claimant further asserts the ALJ also ignored Dr. Burgess's finding that Claimant could only stand for twenty minutes at a time, Dr. Barker's adoption of the FCE restrictions, and Dr. Singh's notes describing Claimant's pain interfering with her ability to perform activities of daily life. *Id.* at 27. These instances again do not amount to the ALJ impermissible inserting his own lay opinion in the place of a medical professionals, but instead reviewing the medical record and weighing the evidence. Thus, the ALJ did not improperly substitute his own lay opinion for that of a medical professional.

## VI. CONCLUSION

For the reasons stated above, it is recommended that the final decision of the Commissioner be reversed and remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **November 5, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within 14 days of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the 22nd day of October, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge